**IN THE COURT OF APPEALS OF IOWA**

No. 24-0287
Filed April 24, 2024

**IN THE INTEREST OF K.A.,**
**Minor Child,**

**C.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Joan M. Black,

Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Kristin L. Denniger, Mount Vernon, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Sara Strain Linder of Linn County Advocate, Inc., Cedar Rapids, attorney

and guardian ad litem for minor child.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

This child-welfare proceeding began and ended with high-speed chases, with continued instability in between. In May 2023, the mother led police officers on a high-speed chase while she was intoxicated. Her one-year-old daughter was in the car with her. The mother was arrested and charged with multiple crimes, including second-offense operating while intoxicated.[1] The child was removed from the mother's custody and placed with the paternal grandmother, where she has remained.[2] She was adjudicated as a child in need of assistance in June.

The mother was released from jail in early August and started inpatient substance-use treatment. She completed treatment the next month and moved in with the paternal grandmother to begin a trial home placement with the child. But the placement ended less than a month later when the mother missed multiple drug tests and failed to follow through with outpatient treatment. From there, the mother's housing and participation in treatment were unstable. She was also ignoring her mental-health needs. By November, the Iowa Department of Health and Human Services recommended the filing of a termination petition.

There were some bright spots for the mother after the State filed the petition in mid-November. She had three negative tests for substances later that month and into December. And she re-engaged in outpatient substance-use treatment, although her provider noted that "she seemed to be less than interested." With this partial progress, the mother's visits moved to semi-supervised in late December. But just a few days later, the mother relapsed on alcohol. Around the

---

[1] The mother's first operating-while-intoxicated offense was from August 2022.
[2] The child's father was in prison when she was removed.

same time, she led law enforcement on yet another intoxicated high-speed chase—at times exceeding 100 miles per hour—before crashing into a cable barrier. The mother was again charged with several crimes, including another operating while intoxicated.

At the termination hearing in January 2024, the mother was in jail awaiting resolution of her many charges. She asked for more time to deal with those charges and "show that [she] can be a safe and a sober parent." But she didn't know when, or how, the charges would be resolved. The department caseworker did not support giving the mother additional time, testifying: "[E]very time there's maybe one step forward there's several steps backwards . . . and more time is not going to change that."

In its termination ruling, the juvenile court found the evidence sufficient to support termination of the mother's parental rights under Iowa Code section 232.116(1)(g) and (h) (2023).[3] The court found termination of the mother's rights to be in the child's best interests because the mother had been given multiple opportunities at reunification, but she "failed to follow through with most of the services offered." Last, the court found that none of the exceptions to termination applied. With each of the three steps in our termination framework satisfied, the court terminated the mother's parental rights.[4]

---

[3] While the termination ruling at one point said the State's petition should also be sustained under Iowa Code section 232.116(1)(*l*), it later said termination was denied on that ground "given the lack of evidence that [the mother] has a diagnosed severe substance-related disorder."

[4] The father was in prison for most of the proceedings but was paroled roughly one month before the termination hearing. The juvenile court granted him an additional three months to work toward reunification given his progress while in prison and after his release.

The mother now appeals, challenging the sufficiency of evidence supporting the grounds for termination and arguing termination is contrary to the child's best interests due to the closeness of the parent-child bond. We review these claims de novo. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

Beginning with the grounds for termination, "[w]hen the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Focusing on section 232.116(1)(h), the mother only challenges the final element, that the child could not be returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that child cannot be returned to parental custody "at the present time"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). Yet the mother acknowledged at the termination hearing that the child could not be returned to her custody because she was incarcerated. This concession amounted to clear and convincing evidence supporting termination on this ground. *See, e.g.*, *In re Z.R.*, No. 21-1290, 2022 WL 1487119, at *3 (Iowa Ct. App. May 11, 2022).

On appeal, the mother tries to sidestep the effect of her incarceration by contending the child could have been returned to her custody because she "had an extensive network of relatives to care for [the child] until she made her pretrial release." But placing the child in the custody of a relative—where she already was at the time of the termination hearing—does not equate to placement of the child in the custody of the mother, as required by the statute. *See In re B.F.-C.*,

No. 21-1914, 2022 WL 1100302, at *3 (Iowa Ct. App. Apr. 13, 2022). And we have often held that a parent's incarceration prevents a return of custody within the meaning of the statute. *See, e.g.*, *In re E.R.*, No. 23-2059, 2024 WL 962320, at *2 (Iowa Ct. App. Mar. 6, 2024); *In re J.M.*, No. 23-1018, 2023 WL 5949193, at *2 n.2 (Iowa Ct. App. Sept. 13, 2023); *In re L.B.*, No. 18-1017, 2018 WL 3650370, at *2 (Iowa Ct. App. Aug. 1, 2018).

Next, the mother argues termination is contrary to the child's best interests, *see* Iowa Code § 232.116(2), due to the closeness of the parent-child bond and detriment resulting from severance, *see id.* § 232.116(3)(c). Properly considering these arguments separately by first addressing the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2).

A review of the mother's past and recent performance shows two things. Her past performance shows that she has a long history of instability with mental health and substance use.[5] And her more recent performance shows that those issues are not in her rearview mirror as she would have us believe. The evidence is clear and convincing that the child cannot be safely returned to the mother's custody now or in the foreseeable future. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (stating the defining elements of a child's best interests are safety and

---

[5] The mother's parental rights to an older child with a different father were terminated with her consent in July 2019. While it was a domestic violence incident that led to that child's removal from the mother's custody, she also struggled with substance use, mental health, and housing instability throughout that case.

need for a permanent home). We accordingly agree with the juvenile court that terminating the mother's rights is in the child's best interests.

As to the permissive exception cited by the mother, Iowa Code section 232.116(3)(c) authorizes the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child . . . due to the closeness of the parent-child relationship." The application of a statutory exception to termination, if one exists, is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted). And "the parent resisting termination bears the burden to establish an exception." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

No one at the termination hearing doubted the mother's love for her child or the bond they shared. But she presented no evidence to support her claim that "irreparable harm will be done to [the child's] mental health if that bond is now severed permanently." While there is a bond, we cannot conclude the disadvantages posed to the child will outweigh the need for termination. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (noting that "the existence of a bond is not enough"). So we conclude this exception does not apply.

Because all three steps in our termination framework support termination of the mother's parental rights, we affirm.

**AFFIRMED.**